O

# United States District Court
# Central District of California

| | |
|---|---|
| MARGARET SKIPPS, as personal representative for the estate of ALEXANDER REAGAN MA'ALONA,<br><br>             Plaintiff,<br><br>     v.<br><br>Alejandro Mayorkas, Secretary, United States Department of Homeland Security, in his official capacity[1]; et al.,<br><br>             Defendants. | Case No. 2:19-CV-10557-ODW (AGRx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [21]** |

## I.   INTRODUCTION

On December 13, 2019, Plaintiff Margaret Skipps, acting as personal representative for the estate of Alexander Reagan Ma'alona, initiated this employment discrimination action against Defendant Alejandro Mayorkas, Secretary of the Department of Homeland Security. (Compl., ECF No. 1.) Plaintiff alleges that Ma'alona, who passed away in 2018, worked for the Transportation Security Administration ("TSA") as a Transportation Security Officer from 2002 to 2012 and was improperly removed from federal service because of his race, color, and sex in

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Alejandro Mayorkas, the current Secretary of the Department of Homeland Security, is automatically substituted as the proper defendant in this action in place of Chad Wolf.

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). (*See generally id.*) Before the Court is Defendant's Motion for Summary Judgment. (Mot. Summ. J. ("MSJ"), ECF No. 21.) For the reasons discussed below, the Court **GRANTS** Defendant's Motion.[2]

## II. BACKGROUND[3]

The following facts are undisputed. As a result of the September 11, 2001 terrorist attacks, Congress passed the Aviation and Transportation Security Act of 2001 ("ATSA"), which created the TSA. (Def.'s Statement of Uncontroverted Facts ("DSUF") 1, ECF No. 21-1.) The ATSA granted TSA broad authority to "assess threats to transportation," "enforce security-related regulations and requirements," and "oversee the implementation, and ensure the adequacy of security measures at airports." (DSUF 3.) Pursuant to the ATSA and TSA policy, all Transportation Security Officers must pass an annual proficiency review to remain employed at the TSA. (DSUF 4.)

In 2012, the time of Ma'alona's removal, the TSA conducted the proficiency review through an annual re-certification process called the Performance Accountability and Standards System ("PASS"). (DSUF 5.) The 2012 PASS assessments were conducted in several categories, including image mastery, standard operating procedures, practical skills, and on-screen alarm resolution protocol mastery ("OMA"). (DSUF 6.) Each assessment had a remediation and re-assessment process designed to provide an employee who did not pass the assessment an additional

---

[2] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[3] The Court **OVERRULES** all boilerplate objections and improper argument in the parties' Statement of Uncontroverted Facts and Statement of Genuine Issues. (*See* Scheduling and Case Mgmt. Order 7–9, ECF No. 14.) Further, where the objected evidence is unnecessary to the resolution of the Motion or supports facts not in dispute, the Court need not resolve those objections here. To the extent the Court relies on objected-to evidence in this Order, those objections are **OVERRULED**. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1122 (E.D. Cal. 2006) (proceeding with only necessary rulings on evidentiary objections).

opportunity to improve their performance. (DSUF 7.) Any employee that failed to pass the assessment after three attempts was subject to removal. (DSUF 9.)

Ma'alona signed a form acknowledging he understood the PASS assessment components and metrics. (DSUF 13.) On August 1, 2012, Ma'alona failed his first assessment in the OMA category. (DSUF 14.) That same day, Ma'alona was notified that he had up to fifteen calendar days to prepare for his second attempt to pass the OMA assessment; he also received remediation training from an instructor. (DSUF 15.) Ma'alona chose to retake the OMA assessment the following day and failed a second time. (DSUF 18.) Again, Ma'alona was informed that he had up to fifteen days to prepare for his third and final attempt to pass the assessment; he received additional mediation training on August 7, 2012. (DSUF 19, 20.) Ma'alona decided to take the OMA assessment on August 10, 2012, when he failed for a third time. (DSUF 21.)

On August 28, 2012, Ma'alona submitted a letter to the TSA's Assistant Federal Security Director for Screening at Los Angeles International Airport, in which he requested additional training and a fourth attempt to pass the OMA assessment. (DSUF 24.) On October 1, 2012, Assistant Federal Security Director for Screening, Jason Pantages issued a Notice of Proposed Non-Disciplinary Removal, for Ma'alona's failure to meet the annual proficiency review requirements. (DSUF 26.) Pursuant to the Notice, Ma'alona submitted a written and an oral response, again requesting a fourth opportunity to take the OMA assessment. (DSUF 27.) After reviewing Ma'alona's file, oral and written responses, the Acting Deputy Assistant Federal Security Director, Geoff Shearer, determined Ma'alona's assessments were administered properly, on the dates of Ma'alona's choosing, and the remediation provided met the requirements of the 2012 PASS guidance. (DSUF 29.) On December 4, 2012, Shearer issued a Notice of Decision on Proposed Non-Disciplinary Removal, which upheld Pantages's recommendation to remove Ma'alona from federal service. (DSUF 31.)

On December 13, 2019, Plaintiff initiated this employment discrimination action on behalf of Ma'alona, who was a male Asian/Pacific Islander with dark brown skin, alleging disparate treatment on the basis of race, color, and sex (Counts I–III). (Compl. ¶¶ 12, 53–91.) Presently before the Court is Defendant's Motion for Summary Judgment on all counts.

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court

should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that sets out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Defendant argues Plaintiff cannot establish a prima facie case of disparate treatment under Title VII because Ma'alona did not perform his duties to the TSA's legitimate expectations for Transportation Security Officers. (MSJ 7–9.) The Court agrees.

Title VII prohibits employers from discriminating against any individual on the basis of race, color, religion, sex, or national origin. *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1002 (9th Cir. 2019); 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of disparate-treatment discrimination, the plaintiff must show that: (1) he belongs to a protected class; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside of the plaintiff's protected class were treated more favorably. *Gowdin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

Plaintiff fails to raise a triable issue of material fact as to the second element, which requires evidence Ma'alona was performing to the TSA's legitimate

expectations. Here, all Transportation Security Officers were required to pass the annual proficiency review to remain employed at the TSA. It is undisputed that Ma'alona failed to attain a qualifying score on his OMA assessment after three attempts. (DSUF 14, 18, 21; Opp'n 7, ECF No. 22.) In light of the critical nature of the TSA's role in securing the safety of the traveling public, this was not a "minor" performance issue. *See, e.g.*, *Diaz v. Eagle Produce Ltd.*, 521 F.3d 1201, 1208 (9th Cir. 2008) ("[A] plaintiff who violates company policy and fails to improve his performance despite a warning has not demonstrated satisfactory performance." (internal quotation marks omitted)); *Swan v. Bank of Am.*, 360 F. App'x, 903, 905 (9th Cir. 2009) (finding the plaintiff failed to establish she performed her job satisfactorily where, despite written warnings, she continued to perform poorly). Therefore, the Court finds that no reasonable jury could conclude Ma'alona was performing to the TSA's legitimate expectations.

Nevertheless, Plaintiff attempts to raise a genuine dispute as to whether Ma'alona was performing to the TSA's legitimate expectations by highlighting Ma'alona's qualifying scores on annual proficiency tests taken prior to the 2012 PASS assessment, and performance reviews from prior years. (Opp'n 8–9.) But Plaintiff misses the point. There is no dispute that in 2012, Ma'alona failed to pass the annual proficiency review after three attempts in contravention of the ATSA and TSA policy. Even if Ma'alona performed well in the years leading up to 2012, that does not change Ma'alona's failure to perform according to TSA's legitimate expectations at the time he was removed from federal service. Therefore, Plaintiff fails to establish a prima facie case of disparate treatment.

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment.

///
///
///
///

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion. (ECF No. 21.) The Court will issue judgment.

**IT IS SO ORDERED.**

August 27, 2021

                                                  **OTIS D. WRIGHT, II**
                                    **UNITED STATES DISTRICT JUDGE**